445 P.2d 765

John William JORDAN, Executor of the Estate of Robert J. Davis, Deceased, Plaintiff and Appellant,

v.

Emma JORDAN and Mary J. Cummings, and the Wasatch County Department of Public Welfare, Defendants and Respondents.

No. 11218.

Supreme Court of Utah.

Oct. 2, 1968.

On Eminent Domain (3d Ed.), § 5.72 [1], pp. 110–115, § 6.2, pp. 392–393, § 6.32, pp. 416–418.

12. Footnote 3, supra.

Ray H. Ivie, Provo, for appellant.

Phil L. Hansen, Atty. Gen., LaVoy O. Taylor, Asst. Atty. Gen., Glen M. Hatch, Salt Lake City, for respondents.

HENRIOD, Justice:

Appeal from a judgment by the trial court sitting without a jury declaring a deed executed by one Davis to be valid. Affirmed, with no costs awarded.

The decedent Davis, an elderly unmarried man at the time of signing the deed, was ill. His sister, Mrs. Jordan, who had helped him and cared for him for about 20 years, was a joint grantee on the deed. On the occasion of Mr. D's ill-

ness, it was necessary to hospitalize him in a local hospital for a short time, then take him to a rest home, where he remained for about six years before he died. At the rest home, shortly after being taken there, his sister brought a deed to him for signature. At that time, Mr. D had enough business acumen to insist that he sign the deed before a notary public, so he was taken to a local bank, where, in the presence of several persons, he signed the same, which signature was notarized by the vice-president of the bank. All those present attested to his competency, as did a number of attendants at the rest home. Generally, at the rest home, he could attend to his personal requirements, had a cheerful attitude, and was more or less an avid newspaper reader. His sister and niece signed a form agreement with the Welfare Department, pledging the property for a loan, indicating that Mr. D had an equitable interest in the property,—of which the latter had no knowledge, to which he did not insist upon, and to which he did not subscribe. The executed deed recited no specific consideration therefor.

Appellant recites facts to indicate Mr. D was incompetent at the time he signed the deed, included in which were an affidavit he signed several years later that might indicate an intention not to convey, or at least a reservation of interest, testimony of a cook at the rest home in the nature of an opinion that Mr. D was ill and seemed

to be incompetent, and the testimony of a couple of doctors as to senility, arteriosclerosis, etc., most of which was somewhat nebulous. There were several other matters attested to that clashed somewhat with some facts upon which the trial court made its findings and judgment.

All of this was chosen out of the entire context and was in a light most favorable to appellant. We do not review the evidence in that atmosphere, but on the contrary in a light most favorable to the conclusion of the arbiter of the facts. We believe the evidence, so canvassed, impels us to resolve this case in favor of the trial court's findings, conclusions, and judgment.

▬▬ Appellant asserts that:

1) Where a confidential relationship exists in a case like this, it is the burden of the superior party to prove equity and fairness in the dealing,—but the fallacy here is that there is no evidence of superiority, undue influence or anything akin to it,—but only that after an illness it was necessary to provide funds to take care of a sick, not necessarily an incompetent man whose illness proved to linger over a six-year period, which might have extended to ten or more years;

2) That the deed was intended to be a will, not a conveyance,—which is supported with very little evidence, which need not have been believed, and which runs counter to the presumption in favor of the validity and recordation of instruments of conveyance;

3) That Mr. D was incompetent,—which we have answered above;

4) That the deed was void, which we have answered above;

5) That the State does not have a lien on the property,—which can be of no interest to appellant in view of our decision here;

6) That there was no consideration for the deed,—which is answerable by the facts that love and affection and the ensuing actions of the parties represented good consideration to support the document.

Looking at the record as a whole, it appears evident that Mr. D knew what he was doing and did it for the purpose of securing himself during the twilight years of his life.

CROCKETT, C. J., and CALLISTER, TUCKETT, and ELLETT, JJ., concur.